UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| BOBBY CRAIG MILLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 6:23-CV-156-HAI |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of the Social Security | ) MEMORANDUM OPINION & ORDER |
| Administration, | ) |
| | ) |
| Defendant. | ) |

*** *** *** ***

Claimant Bobby Craig Mills seeks review of the Social Security Administration's ("the SSA") denial of his request for disability benefits between March 9, 2017, and December 31, 2019. D.E. 16 at 4. Mills initially filed a Title II application for disability benefits on February 23, 2016. D.E. 12 at 68.[1] His claim of disability was eventually rejected by an ALJ on March 9, 2017. That initial application is not under review. Instead, his subsequent request for disability benefits, made on December 14, 2021, is before the Court. *Id*. at 29. Mills's claim was rejected by Administrative Law Judge Tommye C. Mangus ("the ALJ") on December 27, 2022. *Id*. at 41. After exhausting his administrative remedies, Mills sought judicial review of the Commissioner's second denial on August 22, 2023. D.E. 1 at 2. The Commissioner subsequently filed an answer (D.E. 12) on October 17, 2023. Mills filed his brief (D.E. 13) on November 16, 2023. The Commissioner filed

---

[1] When the Court references the administrative record, it does so by reference to the page numbers given to the administrative record by the Clerk, and not by reference to the page numbers listed at the bottom of pages. For simplicity's sake, the Court notes that there is a difference of four between the page numbers. So, for example, the number at the bottom of page 68 (the cited page) is 64.

a response (D.E. 15) on December 7, 2023, and Mills filed a reply (D.E. 16) on December 19, 2023.  Thus, the matter is ripe for adjudication.

The Court has jurisdiction to hear Mills's challenge under 42 U.S.C. § 405(g).  Mills raises one issue, asserting that the ALJ's decision should be vacated and remanded because the ALJ failed to address whether his headaches were the medical equivalent of Listing 11.02(B), as SSR 19-4p requires the ALJ to do.  D.E. 13 at 8, 15.  Mills established a substantial question regarding whether he was entitled to be found disabled at step three of the SSA's five-step process for determining whether a claimant is disabled based on SSR 19-4p.  But the ALJ did not make the SSR 19-4p inquiry with sufficient clarity to permit adequate judicial review of it.  So, the Court **GRANTS** Mills's motion (D.E. 13), **VACATES** the denial of benefits, and will **REMAND** this matter so that the ALJ may address the SSR 19-4p issue.  *See E.g.*, *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 93–95 (1943).  Judgment will be entered consistent with this Memorandum Opinion and Order.

## I.     Legal Background

Individuals who are disabled are entitled to receive aid under the Social Security Act.  An individual is disabled if that individual has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether an individual is disabled, the SSA uses a five-step process.  20 C.F.R. § 404.1520(a)(4).  First, the SSA determines if the individual is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, the individual is not disabled.  *Id*.  Second, the SSA determines the medical severity of the claimant's impairments, considered together.  20 C.F.R. § 404.1520(a)(4)(ii).  If the impairments are not severe, the analysis concludes because the claimant is not disabled.  *Id*.  Third, the SSA

compares the claimant's impairment against certain pre-listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If step three does not resolve the issue of whether a claimant is disabled, the SSA makes a residual functioning capacity determination. 20 C.F.R. § 404.1520(a)(4)(iv). Having made that determination, the SSA evaluates whether a claimant is able to perform his past work at step four. *Id.* Finally, if the claimant cannot engage in that past work anymore, the SSA determines if there is other work that exists in substantial numbers in the national economy that the claimant could perform. 20 C.F.R. § 404.1520(a)(4)(v).

If the claimant's impairment aligns with one of the listed impairments at step three, the analysis ends, and the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Similarly, when a claimant establishes that his disability is medically equivalent to a listed impairment, then the inquiry into whether the claimant is disabled can be resolved at that step in the claimant's favor. SSR 17-2p; 20 CFR 404.1526. A claimant's impairment is the medical equivalent to a listed impairment when "it is at least equal in severity and duration to the criteria of [the] listed impairment." 20 CFR 404.1526(a). One way that a medical equivalency can be found is by comparing the factual findings regarding a claimant's impairment with a closely analogous impairment that is listed. 20 CFR 404.1526(b)(2).

Headaches are not an Appendix 1 listed impairment that would direct a finding of disability at step three. But the Administration has issued SSR 19-4p, which directs ALJ's to compare primary headache disorders with paragraphs B and D of listing 11.02. Specifically, answer 8 in SSR 19-4p clarifies that "Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder." Listing 11.02(B)[2] provides that a step three

---

[2] Mills does not challenge the decision on the basis that the agency should have addressed whether his condition was medically equivalent to Listing 11.02(D). So, the Court addresses only whether there is a substantial question whether his condition is the medical equivalent of Listing 11.02(B).

3

impairment is met for Dyscognitive Seizures that occur at least one time per week for at least three months despite adherence to prescribed treatment. Listing 11.00H1b gives the following description of dyscognitive seizures: "'Dyscognitive Seizures' are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." Listing 11.00H1b.

Answer 8 in SSR 19-4p provides that "to evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, [the SSA] consider[s]: a detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena …; the frequency of headache events; adherence to prescribed treatment; side effects of treatment …; and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day." In addition to showing sufficient headache frequency, a claimant must establish that said headaches are like dyscognitive seizures insofar as the headaches cause an alteration of the claimant's consciousness.

Ultimately, the SSR 19-4p inquiry requires asking whether a claimant's headaches interfere so significantly with the claimant's ability to partake in daily activities with sufficient frequency so as to justify a finding of disability. *See Jandt v. Saul*, No. 1:20-CV-00045-HBB, 2021 WL 467200, *8 (W.D. Ky. Feb. 9, 2021) (gathering cases). So, the mere existence of headaches is insufficient to meet that standard. *Broderick v. Kijakazi*, No. 2:21-CV-12480, 2022 WL 19518407, *13 (E.D. Mich. July 12, 2022). In contrast, having severe migraines that are accompanied by dizziness and fainting spells is sufficient to require an ALJ to address whether those headaches are the medical equivalent of dyscognitive seizures. *Willis v. Comm'r of Soc. Sec.*

4

*Admin.*, No. 2:19-CV-11689, 2020 WL 1934932, *3 (E.D. Mich. Apr. 22, 2020). Similarly, when a claimant has migraines that are so severe that they keep the claimant from driving, from standing for long periods of time, and from focusing the claimant's eyes, then the headaches are the medical equivalent of Listing 11.02(B) dyscognitive seizures. *Fillinger v. Comm'r of Soc. Sec.*, No. 5:20-CV-01653, 2022 WL 952192, *4 (N.D. Ohio Mar. 30, 2022).

## II. Standard of Review

ALJ's are required to discuss a relevant listing when the record raises a substantial question regarding whether a claimant meets the requirements of a listing at step three. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). To establish that there is a substantial question regarding whether the claimant meets a step three listing or its equivalent, "the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of" it. *Smith-Johnson*, 579 F. App'x at 432.

But an ALJ need not always expressly address why a claimant was not deemed disabled at step three. Even when the claimant has shown a substantial question regarding whether the claimant meets the requirements for a finding of disability at step three, no such discussion is required if other portions of the ALJ's decision disclose the basis for rejecting such a result. SSR 17-2p. So, when other portions of the ALJ's decision disclose the ALJ's rationale for rejecting the claim of step three disability, then "a statement that the individual's impairment does not medically equal a listed impairment constitutes a sufficient articulation for [the step three no-disability] finding." SSR 17-2p at *4. Still, the ALJ's decision must be sufficiently clear to enable meaningful judicial review. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). That means an ALJ must "actually evaluate the evidence, compare it to [the relevant listing], and give an explained conclusion." *Id*.

### III.      The ALJ's Decision

The ALJ proceeded through all five steps of the Social Security Disability evaluation process.  First, the ALJ found that Mills was not engaged in substantial gainful activity.  D.E. 12 at 32.  Second, the ALJ determined that Mills had several severe impairments.  *Id*.  The claimant's impairments were found to be (1) degenerative disc disease, (2) obesity, (3) headaches, (4) adjustment disorder, and (5) anxiety.  *Id*. at 32, 71.  At step three, the ALJ determined that Mills did not have any impairment listed in Appendix 1.  *Id*. at 33.  The ALJ also found that Mills did not have an impairment or combination of impairments that was medically equivalent to an impairment listed in Appendix 1.  *Id*.  But the ALJ gave no reasoning at step three regarding why Claimant's headaches were not the medical equivalent of Listing 11.02(B).

Instead, the ALJ discussed Mills's headaches at step four.  D.E. 12 at 36, 37.  The ALJ did not discuss the claimant's headaches at step five.  *Id*. at 39-40.  The ALJ explained that:

> "At the hearing, the claimant testified that his worst problems are his headaches and spinal injury … His headaches feel like a searing rod sticking through his eye to the base of his skull. He also feels like there are two spikes form his left temple to the right side of his skull. These headaches occur 2-3 times per week, lasting 3 hours to a week at a time. Sumatriptan is helpful but causes arthritis flares from head to toe.
> …
> The record also documents intermittent headaches. Exhibit B7F [Veteran's Administration Records]. However, the medical records do not indicate that these occur with a severity or frequency not accommodated by the above residual functional capacity. The claimant's residual functional capacity limits his noise exposure, which would accommodate his occasional headaches."

*Id*. at 36, 37.  The residual functional capacity (RFC), in turn, explains that:

> "After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that does not require more than occasional climbing ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, crawl, and climb stairs and ramps. He should avoid concentrated, frequent exposure to unprotected heights and dangerous machinery. He should not be exposed to noise over SCO level 3 without hearing protection. From a mental standpoint, the claimant can understand and remember simple instructions. He can maintain attention, concentration, and pace to carry out simple tasks

> over 2 hour segments during an 8 hour workday. He can tolerate occasional interaction with the general public. He can adapt to occasional workplace changes related to simple tasks."

*Id*. at 35. In reaching the RFC conclusion, the ALJ explained that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [related to his impairments] are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. at 36. The ALJ so concluded "because the record shows no significant change in the claimant's physical condition, only changes in the listings under which his impairments are considered." *Id*. Although the ALJ found that Mills could not perform his past work, the ALJ also concluded that Mills "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." *Id*. at 39, 40. Thus, the ALJ found that Mills "was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2019, the last date insured." *Id*. at 41.

## IV. Analysis

This case turns on (1) whether the ALJ's decision is sufficient to disclose the rationale for the ALJ's rejection of the Mills claim to *per se* disability at step three based on his headaches and (2) whether Mills has established a substantial question regarding whether his condition is the medical equivalent of 11.02(B). The relevant subjects of those inquiries are (1) the number of times per week Mills suffered from headaches, (2) how many consecutive weeks did he suffer from such headaches, (3) whether the headaches persist despite his adherence to prescribed treatments, and (4) if the headaches were sufficiently severe to alter his consciousness, as contemplated by Listing 11.02(B). It does not, contrary to the Commissioner's suggestion, turn whatsoever on whether the 11.02(B) equivalency issue was raised before the agency. D.E. 15 at

7

8-9; *Sims v. Apfel*, 530 U.S. 103, 112 (2000) (plurality) (issue exhaustion not required for social security disability claimant to seek judicial review).

### a. Substantial Question Inquiry

The Court first determines whether Mills raised a substantial question over whether his headaches were the medical equivalent of Listing 11.02(B) seizures. To show a substantial question, Mills needs to point to specific evidence that reasonably supports finding his headaches to be the medical equivalent of Listing 11.02(B). That means he must first point to specific evidence that reasonably establishes his headaches occurred at least once a week for three months. Second, Mills must identify evidence in the record that his headaches persisted despite his adherence to prescribed treatment. Finally, Mills must point to evidence that reasonably supports finding his headaches to be an "alteration of consciousness" type of event. He has done so.

First, Mills points to varying VA medical records establishing he had headaches over the course of 2018 and 2019. Not all records indicate how frequently the headaches occurred, and none individually indicate that the headaches continued over three months. But many of the records indicate that Mills had 2-3 headaches per week. *See* D.E. 16 at 5. And the records are spread out over a sufficient period for an individual to reasonably find that the headaches occurred each week over the course of three months. *Id*. So, there is a substantial question as to whether Mills had at least one headache each week over the course of three months.

The Commissioner disagrees. In the Commissioner's view, since there are no reports specifically saying that Mills has at least one headache each week for a three-month period, a reasonable factfinder could not infer that fact from multiple medical reports over the course of two years indicating that Mills has multiple headaches per week. D.E. 15 at 4-5. Such specificity is not required and the combination of records does potentially support such an inference.

Second, Mills takes Sumatriptan and Propranolol for his headaches. D.E. 12 at 36, 251. Thus, Mills has established a substantial question on the issue of whether his symptoms persist despite adherence to prescribed treatment. Mills has established that he takes medication for his headaches, and it is unclear from the record how much those medications help in light of his continuing headaches during the time in question.

The Commissioner resists this conclusion, pointing out that the reports from the time between the initial adjudication and the date Mills was last insured indicate only that he should take Sumatriptan. D.E. 15 at 7. In effect, the Commissioner is arguing that an individual being prescribed medication is insufficient evidence that the individual took that medication to allow a reasonable person to find that the individual did, in fact, take the medication. Again, in the Court's view, such an inference can be drawn.

The Commissioner also relies on the previous ALJ's finding that the headaches could be controlled via medication and physical therapy. D.E. 15 at 7. In so relying, the Commissioner overlooks that Mills's condition could have become, for any number of reasons, untreatable since that initial adjudication, so the previous finding is not dispositive. Again, the Commissioner seems to be arguing that the ALJ's decision would have been supported by substantial evidence had the ALJ made it. But the Court must assess whether a substantial question exists concerning medical equivalence.

That leaves whether Mills can point to specific evidence that would reasonably support finding that his headaches cause the medical equivalent of the "alteration of consciousness" prong of Listing 11.02(B). SSR 17-4p. Mills cites a report, authored by Dr. Kip Beard, from 2016, which is before the initial adjudication, that states "As the headache begins and develops, it is described as sharp, throbbing, stabbing, deep steady ache or pressure-like with associated

9

symptoms that includes sound, light, and odor sensitivity, blind spots, light flashes, tingling in the arm, excess tearing in eyes, stuffy and runny nose." D.E. 12 at 316. Another report from 2016, cited by Mills, explains that his headaches feel "like still rods in his temple." *Id*. at 1218. A veteran's administration (VA) report from 2019 indicates that Mills claims he cannot work because "'Back and legs don't hold up, chronic headaches, balance issues.'" *Id*. at 328. A VA report from March 2021 indicates that he explained his physical activity was limited due to "Pain, lack of sleep. Balance issues. Headaches. Memory." *Id*. at 703, 706. A VA report from April 2020 explains that he has chronic headaches. *Id*. at 775, 776. A VA report from October 2019 indicates the same. *Id*. at 824, 825. So too does one from May 2019. *Id*. at 887, 889, 892, 893. One from January 2019 does as well. D.E. 12 at 958, 960. Mills cites a bevy of other places in the record supporting his position as well. *See* D.E. 13 at 11-12. The Beard Report, particularly when considered with the various Veteran's Administration reports, establishes a substantial question regarding whether Mills meets the 19-4p requirements.

While standing alone, the inference that Mills's pain interfered with his ability to undertake daily activities need not be drawn, it is a reasonable inference. Thus, it would reasonably support a finding that Mills's headaches caused an alteration of consciousness. So, the ALJ could have concluded that Mills's headaches constituted an alteration of consciousness sufficient to meet SSR 19-4p's standard had the ALJ undertaken such an inquiry. Like how the *Willis* claimant's migraines, which were accompanied by fainting spells and caused the claimant to feel unbalanced, required the ALJ to address whether the *Willis* claimant's headaches were the medical equivalent of dyscognitive seizures, the evidence put forth by Mills obliged the ALJ to discuss whether his headaches were the medical equivalent of Listing 11.02(B) seizures.

To resist the conclusion that Mills has established a substantial question on the issue of whether his headaches are the medical equivalent of an "alteration of consciousness" associated with epilepsy, the Commissioner first asserts that Mills cannot rely on medical reports pre-dating the initial ALJ adjudication.  D.E. 15 at 6.  In support of this argument, the Commissioner cites 20 C.F.R. § 404.955, which is the res judicata regulation.  *Id*.  42 U.S.C. § 405(h) provides that "the findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."  *See also Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (res judicata can apply to agency determinations).

But res judicata does "not prevent the [Commissioner] from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Earley*, 893 F.3d at 931.  In *Earley*, the claimant filed for disability benefits, and that claim was denied.  *Id*. at 930.  Subsequently, the claimant filed another claim seeking disability benefits for a different time period.  *Id*. at 933.  Explaining that res judicata does not bar such a claim, the Sixth Circuit explained that "when an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Id*.

Here, although the most detailed reports do pre-date the initial ALJ decision, the date of those reports does not preclude them from being considered.  Since SSR 19-4p was issued after the initial March 9, 2017, adjudication, the new claim that was brought by Mills is not barred by res judicata due to the previous claim having been rejected.  That is because, as Mills correctly notes, SSR 19-4p was promulgated on August 26, 2019.  SSR 19-4p; D.E. 13 at 10.  Since SSR

11

19-4p is a new regulatory standard, the previous ALJ decision is not res judicata. *Earley*, 893 F.3d at 931.

To the extent that the Commissioner is trying to argue that Mills's reliance on the medical records is barred by issue preclusion, that argument also fails. Issue preclusion prevents successive litigation of an issue of law or fact already litigated and resolved in previous litigation. *Earley*, 893 F.3d at 933. The Commissioner claims that since the previous ALJ found that Mills was not disabled after considering those records, he cannot rely on the records. D.E. 15 at 7. As *Earley* points out, however, "any earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." 893 F.3d at 933. So, "an applicant remains free to bring a second application that introduces no new evidence or very little new evidence after a failed application." *Id*.

Here, one of the two prior medical opinions (Dr. Kip Beard's opinion, see D.E. 12 at 316-319) was discussed as follows by the ALJ: "consultive examiner Beard noted normal, stable, and sustainable gait, no atrophy, no sensory loss, and no problems moving in the examination room." D.E. 12 at 74. As such, to the extent that the first ALJ considered Dr. Beard's opinion for his observations regarding Mills's headaches, whether the first ALJ rejected it for factual or legal reasons cannot be determined. If the latter, then the first ALJ did not resolve the relevant question of whether the details of the report were accurate.[3] Since the basis for the report being disregarded cannot be determined, its consideration is not barred by issue preclusion as the second ALJ to thought was the case. *See* D.E. 12 at 39. In short, Mills included enough evidence in the

---

[3] Since SSR 19-4p changed the legal standard for determining whether Mills is disabled between the first and second ALJ decision, it follows that a rejection of the report on legal grounds (i.e., that even if the content of the report was factually correct, it would not establish that Plaintiff was disabled) would not bar its subsequent consideration.

administrative record to raise a substantial question over whether his headaches were the medical equivalent of Listing 11.02(B).

### b. Insufficiency of the ALJ's Discussion

As Mills has established a substantial question regarding whether his headaches are the medical equivalent of Listing 11.02(B), the ALJ was obliged to explain why Mills did not meet that exception with sufficient clarity to permit meaningful judicial review. Consistent with SSR 17-2p, the ALJ did not list specific reasons for rejecting the finding of a step three disability based on SSR 19-4p in that section of the ALJ's analysis. So, another portion of the ALJ's decision must contain sufficient information to disclose why the ALJ rejected Mills' claim of disability at step three for further proceedings to be unnecessary.

The ALJ's discussion of the severity and frequency of Mills's headaches are tied to the RFC. D.E. 12 at 36, 37. The ALJ explained that "the claimant's residual functional capacity limits his noise exposure, which would accommodate his occasional headaches." *Id*. at 37. Thus, it seems that the ALJ thought that Mills's headaches were tied to hearing issues. If so, then the decision lacks substantial evidence in support of it because the record contains no evidence tying his headaches specifically with noise exposure.[4] Instead, the record indicates that his headaches are linked to a traumatic brain injury he suffered while in the middle east. D.E. 12 at 310, 316, 701.

Nor can the ALJ's decision be said to rest on Mills's use of Sumatriptan making his headaches susceptible to treatment because the ALJ fails to specify how helpful Sumatriptan is in treating his headaches. If the Sumatriptan enabled Mills to go about his daily activities, then relying on his ability to take the medication, assuming that it was a viable treatment option, would be a sufficient reason for the ALJ to conclude that SSR 19-4p did not direct a finding of disability.

---

[4] The ALJ may have confused Mills' hearing for his vision, which does sometimes seem to be affected by Plaintiff's headaches. D.E. 12 at 1281.

But if the medication merely made Mills's pain slightly more tolerable, without enabling him to undertake the daily activities of life, then Mills's use of Sumatriptan would not be an adequate treatment option justifying the step three conclusion.

The Commissioner also claims that Mills cannot rely on his subjective testimony at all because the ALJ found it to be not entirely supported by the record. D.E. 15 at 6. The Commissioner premises that conclusion on the fact that Mills has not challenged the ALJ's finding. But the ALJ also did not specify that Mills's subjective testimony was entirely contradicted by the record, and the ALJ failed to specify to what extent his testimony was being discounted. It could be the case that the ALJ disbelieved all of it on the basis that some of it was inconsistent. But it is also possible that the ALJ only disregarded the portions of Mills's testimony that were inconsistent with the record.[5] So, the ALJ's findings on Mills's credibility are insufficiently clear to enable the Court to conclude that the ALJ disbelieved the entirety of Mills's subjective assertions. Thus, the Commissioner's argument on this point fails.

## V.   Conclusion

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment (D.E. 13) is **GRANTED**;

(2) The Commissioner's Motion for Summary Judgment (D.E. 15) is **DENIED**;

(3) **JUDGMENT** will enter vacating the denial of benefits and remanding this matter so that the ALJ can evaluate under SSR 19-4p whether Mills's headaches are the medical equivalent of Listing 11.02(B).

---

[5] The limited discussion regarding Mills's headaches that the ALJ does provide seems to indicate that he did not disbelieve his testimony regarding headaches. D.E. 12 at 37. The ALJ did, however, downplay it. *Id*.

14

This the 12th day of January, 2024.

Signed By:
Hanly A. Ingram
United States Magistrate Judge